**FREEDMAN NORMAND FRIEDLAND LLP**
Ivy Ngo (S.B.N. 249860)
2108 N Street, #15185
Sacramento, CA 95816
T: (786) 924-2900
Email: ingo@fnf.law

Kyle Roche (*pro hac vice* forthcoming)
Riley Clafton (*pro hac vice* forthcoming)
Mendel Konikov (*pro hac vice* forthcoming)
155 E. 44th Street, Suite 915
New York, NY 10017
T: (646) 494-2900
Email: kroche@fnf.law
rclafton@fnf.law
mkonikov@fnf.law

*Counsel for Petitioners*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALICIA BROWN and TRACIE BOND JONES, on behalf of T.J., a minor,<br><br>Petitioners,<br><br>v.<br><br>TIKTOK INC.,<br><br>Respondent. | Case No.<br><br>**VERIFIED PETITION TO COMPEL ARBITRATION**<br><br>Date: December 21, 2026<br>Time: 9:00 a.m.<br>Courtroom: 1<br>Judge: Hon. Jesus G. Bernal |

Petitioners Alicia Brown and Tracie Bond Jones, on behalf of her minor son, T.J., bring this petition under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to compel Respondent TikTok Inc. ("TikTok") to honor the arbitration agreement it wrote and imposed on its minor and young adult users.

TikTok built its platform to addict children, and it succeeded. Petitioners were among those children. Petitioners used TikTok while the 2019 Terms were in effect. Those terms require users to resolve any claim "relating in any way" to their use of TikTok through individual arbitration before the American Arbitration Association ("AAA"). Those terms also provide that the arbitration provision "survive[s] any termination" of the terms. Petitioners notified TikTok of their disputes and then filed individual arbitration demands with the AAA.

TikTok refused to arbitrate. It told the AAA that its prior terms of service were superseded by its later terms, which purport to require that disputes be litigated in court. TikTok invokes the later terms to oppose arbitration of previously accrued claims. But if the later terms are applied to those claims, the later terms would require a court forum and could also time-bar the claims. Petitioners ask this Court to compel TikTok to arbitrate Petitioners' accrued claims in accord with the parties' agreement.

TikTok already tried to run this argument before this Court, and it lost. In *Edwards v. TikTok, Inc.*, a TikTok user petitioned to compel arbitration of claims that accrued under the same 2019 terms, and TikTok argued that its July 2023 terms superseded the arbitration agreement. Judge Bernal rejected that argument. He held that because TikTok wrote the 2019 arbitration provision to "survive any termination," that provision controls claims that arose before the later terms took effect. He also held that TikTok could have displaced the arbitration provision only through a "clear and specific waiver" of the survival clause, and TikTok had not done so. *Edwards v. TikTok, Inc.*, 804 F. Supp. 3d 1049, 1053 (C.D. Cal. 2025) (Bernal, J.), *appeal docketed*, No. 25-5868 (9th Cir. Sept. 16, 2025). TikTok

appealed, and the appeal is pending before the Ninth Circuit.

While the appeal was pending, TikTok USDS Joint Venture LLC issued new terms in January 2026 and updated them in July 2026. The 2026 terms carry forward the 2023 venue clause, one-year bar, and integration clause. The 2026 terms also claim to extend the venue clause and one-year bar to any dispute relating to "the Platform," and purport to add a phrase saying the venue clause applies "regardless of whether the claim . . . arose prior to your agreement to these Terms." Like the 2023 Terms, the 2026 venue and integration clauses do not expressly address the 2019 arbitration provision or its survival clause. Telling users that a venue clause reaches old claims is not a clear and specific waiver of an arbitration agreement that both sides agreed would survive. *See id.* at 1056 ("these notices did not make clear that the 2023 TOS would supersede the survivability clause of the 2019 TOS").

Petitioners ask this Court to follow *Edwards* on the July 2023 Terms and to hold that the Joint Venture's 2026 Terms likewise did not displace TikTok Inc.'s surviving agreement to arbitrate claims that accrued under the 2019 Terms.

## I. Introduction

1. TikTok designed its platform to addict children. It knew that children as young as eight were using the app "every day," and concluded that the platform is "particularly popular with younger users," who "have minimal ability to self-regulate effectively." Clafton Decl. Ex. 4 (Brown Demand) ("Demand") ¶¶ 66, 259. TikTok's analyses recognize that the "For You" feed is "addictive" and compare its mechanics to "the coercive design used in gambling." *Id.* ¶ 6. One internal discussion among TikTok employees asked, "[i]s the reason we have designed such an addictive experience to maximize ad revenue?" *Id.* It was, and TikTok continued the course, following those children through school. Its creators had called American teenagers a "golden audience," *id.* ¶ 62, and by July 2020, TikTok had reached 95% penetration among U.S. smartphone users under seventeen. *Id.* ¶¶ 6, 65.

2. Petitioners are among the young people TikTok targeted for addiction and the resulting revenue. Petitioners used TikTok while the arbitration agreement at issue governed the platform. Petitioners developed compulsive use of the platform and suffered resulting harm—including anxiety, depression, sleep deprivation, academic decline, social withdrawal, and other injuries. *See id.* ¶¶ 271–75.

3. Petitioners rely on TikTok's February 2019 Terms of Service (the "2019 Terms," Clafton Decl. Ex. 1). The 2019 Terms require binding arbitration of any claim "relating in any way to your use of TikTok's services and/or products." *Id.* at 15. The AAA administers that arbitration under its rules, including, for individuals, the AAA's consumer procedures. *Id.* And TikTok wrote that "[t]his arbitration provision will survive any termination of these Terms." *Id.*

4. In July 2023, as legal scrutiny of TikTok's conduct mounted, TikTok discreetly replaced arbitration with a court-venue clause and a one-year limitations period (the "2023 Terms," Clafton Decl. Ex. 2). That 2023 venue clause reaches only disputes "arising out of or relating to these Terms"—the 2023 Terms—says nothing about claims that had already accrued, and says nothing to displace the 2019 arbitration provision. *Id.* § 12.B. This Court already held that the 2023 Terms do not apply retroactively, that the prior arbitration clause was not waived, and that the 2019 Terms' arbitration provision governs claims that arose before the 2023 Terms were implemented. *See Edwards*, 804 F. Supp. 3d at 1053. TikTok appealed to the Ninth Circuit, which indicated that it is considering the appeal for its February 2027 or March 2027 argument calendar. Clafton Decl. ¶ 10 & Ex. 7.

5. Rather than await the outcome of the pending appeal, TikTok attempted gamesmanship again. On January 22, 2026, the day the new TikTok USDS Joint Venture LLC (the "Joint Venture") claims to have taken over operation of the TikTok platform, new terms of service were issued in the Joint Venture's name that purport to send every claim to court "regardless of whether the claim, cause of

action, or dispute arose prior to your agreement to these Terms." Clafton Decl. Ex. 3, § 8.2. The new terms also profess to forever bar any claim not brought within one year regardless of when the claim accrued, to make users indemnify the Joint Venture and its affiliates for arbitration and litigation costs and attorneys' fees, and to cap liability at the greater of $100 or the amount the user paid in the past 12 months. *Id.* §§ 4, 7, 8.3. These new terms were presented on a take-it-or-leave-it basis, with no opt-out: "if you want to keep using the Platform, you will need to agree to the changes." *Id.* § 6. On July 15, 2026, the Joint Venture made additional minor changes not relevant to this dispute in updated terms of service (together with the January 22, 2026 terms, the "2026 Terms"). TikTok Inc. is not a party to the 2026 Terms, but it contends that they are the operative terms that govern its dispute with Petitioners.

6. On September 1, 2026, Petitioners filed arbitration demands with the AAA under the 2019 Terms for claims that accrued under the 2019 Terms. On October 26, 2026, TikTok responded to the Demands that it "decline[d] to arbitrate." Clafton Decl. Ex. 5 ("Declination") at 2. TikTok asserted that the arbitration agreement in the 2019 Terms "was superseded by a later amendment in July 2023," that the AAA "lacks jurisdiction," and that the AAA "should therefore close the file as to claims" against it. *Id.* at 2. TikTok also contended that the dispute "cannot be decided by the [AAA] or any other arbitrator" and must be "settled by the courts." *Id.* In its papers before the AAA, TikTok described the 2026 Terms as "the operative TikTok Terms of Service" and asserted that their venue clause "is present in every version of the TikTok Terms of Service since they were updated in July 2023." *Id.* at 2-3.

7. Neither set of terms can do what TikTok claims. The 2023 venue clause is prospective, as this Court held in *Edwards*. And the 2026 Terms are not TikTok Inc.'s to invoke. TikTok Inc. did not issue them and is not a party to them. They are

"an agreement between you and TikTok USDS Joint Venture LLC," which has told the California Attorney General that it "became the provider of the platform on January 22, 2026," and that TikTok Inc. "was the provider of the platform" during the preceding period.[1] As a result, the supposed one-year bar on claims included in the 2026 Terms runs only between users and the Joint Venture. Clafton Decl. Ex. 3 § 8.3.

8. Even if TikTok could apply the 2026 Terms, the 2026 integration clause, like its 2023 predecessor, says nothing about arbitration or the survival provision of the 2019 Terms. *Id.* § 9. And the 2026 Terms were imposed in a manner that is both procedurally and substantively unconscionable: they were presented on a take-it-or-leave-it basis, to users TikTok had addicted, while TikTok's appeal in *Edwards* was pending, with no opt-out and no disclosure that the new terms would extinguish accrued rights. *See infra* ¶¶ 48–57.

9. TikTok's change in forum is about cost. TikTok insisted on individual AAA arbitration for years. It changed course in 2023 after it settled privacy class actions for an average of about $27 per class member but paid about $1,250 per claimant to users who opted out and pursued AAA arbitration. *See*, *e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, MDL No. 2948, ECF No. 231 at 1-2 (N.D. Ill.). Now that arbitration no longer favors it, TikTok wants out—and takes the position it can wipe out the accrued claims on the way.

10. Courts do not bless that maneuver. As Judge Alsup put it: "The irony, in this case, is that the [consumers] wish to enforce the very [arbitration] provisions

---

[1] TikTok USDS Joint Venture LLC, *California AB 587 Social Media Companies Terms of Service Report: July 1 to December 31, 2025*, at 1 n.1 (submitted to Cal. Att'y Gen. Apr. 1, 2026), https://oag.ca.gov/sites/default/files/TikTok%20California%20AB%20587%20Report%20(Q3%20&%20Q4%202025).pdf/TikTok%20California%20AB%20587%20Report%20(Q3%20&%20Q4%202025).pdf ("*AB 587 Report*"); *see also* Clafton Decl. Ex. 3 at 1.

forced on them by seeking . . . individual arbitrations, the remnant of procedural rights left to them. [The company], faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. . . . This hypocrisy will not be blessed." *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067-68 (N.D. Cal. 2020); *see also* Dorothy Atkins, *'The Shoe Is On The Other Foot': Judge Needles Meta In MDL*, LAW360 (Feb. 11, 2026), https://www.law360.com/articles/2440743 (Judge Gonzalez Rogers declined to force arbitration claimants to litigate in the MDL, remarking, "It is always interesting to me that big companies come in here, and they're like, 'These people need to arbitrate,' and when the shoe is on the other foot — when they don't like the fact that they're arbitrating — they complain about it.").

11. Petitioners file this petition to require TikTok to arbitrate under the agreement it drafted.

## II. Parties

12. Petitioners are Alicia Brown and Tracie Bond Jones, on behalf of her minor son, T.J. Ms. Brown and T.J. each used TikTok while the 2019 Terms were in effect, and each filed an individual demand for arbitration against TikTok with the AAA. Clafton Decl. ¶ 6 & Ex. 4.

13. Alicia Brown is nineteen years old and a citizen of Georgia. She began using TikTok as a minor, when she was approximately ten years old, and became addicted, using it 30 to 35 hours per week and finding it difficult to stop. Clafton Decl. Ex. 4 (Brown Demand) ¶¶ 16, 271, 273. Her compulsive use caused or worsened depression, anxiety, negative body image, disordered eating, and loss of interest in activities she once enjoyed. *Id.* ¶ 274.

14. T.J., the minor son of Petitioner Tracie Bond Jones, is thirteen years old and a citizen of North Carolina. He began using TikTok in approximately 2022, when he was about nine years old, and became addicted, using it 35 to 40 hours per

week and finding it difficult to stop. Clafton Decl. Ex. 4 (Jones Demand) ¶¶ 16, 271, 273. His compulsive use caused or worsened chronic sleep deprivation, academic decline, social withdrawal, loss of interest in activities he once enjoyed, and negative body image. *Id.* ¶ 274.

15. Respondent TikTok Inc. is a for-profit corporation incorporated in California, with its headquarters at 5800 Bristol Parkway, Suite 100, Culver City, California 90230. TikTok Inc. operated the TikTok platform in the United States and is the counterparty to the 2019 Terms. Clafton Decl. Ex. 1 at 1.

16. TikTok USDS Joint Venture LLC describes itself as "the operator of the Platform in the United States." Clafton Decl. Ex. 3 at 1. The 2026 Terms were issued in the Joint Venture's name and state that they "completely replace any prior terms of service between you and TikTok Inc." *Id.* § 9. The Joint Venture has told the California Attorney General that it "became the provider of the platform on January 22, 2026," and that TikTok Inc. "was the provider of the platform" during the preceding period. *AB 587 Report* at 1 n.1. Petitioners reserve all rights with respect to the Joint Venture, including as to its relationship to TikTok Inc. and its liability for TikTok Inc.'s obligations.

## III. Jurisdiction and Venue

17. Petitioners seek relief under 9 U.S.C. § 4. Section 4 provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." TikTok has refused to arbitrate under written arbitration agreements, and Petitioners are aggrieved by that refusal.

18. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). Looking through the petition to the underlying controversy, as Section 4 directs, *see Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009), the controversy is between citizens of different States. Ms. Brown is a citizen of Georgia, and T.J. and Ms. Jones are citizens of North Carolina. *See* 28 U.S.C. § 1332(c)(2). TikTok is a citizen of California, where it is incorporated and has its principal place of business. The amount in controversy for each Petitioner exceeds $75,000, exclusive of interest and costs: Petitioners seek compensatory damages for years of addiction-driven injury, including lost educational and developmental opportunity, diminished earning capacity, medical and treatment expenses, and emotional injury. *See* Clafton Decl. Ex. 4 (Brown Demand and Jones Demand), Prayers for Relief ¶¶ A–B.

19. This Court has general personal jurisdiction over TikTok because TikTok is incorporated and headquartered in California.

20. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because TikTok resides in this District. TikTok has no basis to object: the terms TikTok invokes to contest arbitration designate the U.S. District Court for the Central District of California as an exclusive forum. Clafton Decl. Ex. 2 § 12.B; Clafton Decl. Ex. 3 § 8.2.

## IV. Factual Background

### A. TikTok Engineered Its Platform to Addict Children.

21. Since its U.S. launch, TikTok has become one of the most-used apps in the country. TikTok's CEO testified in March 2023 that the app had more than 150 million monthly active users in the United States. Demand ¶ 36. Children make up a large and growing share of that audience. As early as 2019, TikTok told advertisers that more than a quarter of its active U.S. users were 17 or younger. *Id.* ¶ 65. TikTok's July 2020 reporting showed 49 million daily U.S. users, more than one in three of them 14 or younger. *Id.* ¶ 37. The number of 14-to-18-year-old users grew

from 6.9 million in 2018 to nearly 41 million in 2024. *Id.* ¶ 53. By 2024, roughly six in ten U.S. teens used TikTok, and one in six were on it "almost constantly." *Id.* ¶¶ 67–68.

22. That reach is the product of intentional and persistent targeting and design choices deployed on young children. TikTok's own research described its users as "middle school to high schoolers, like 8–18," and found that children as young as eight were using the app "every day." Demand ¶¶ 66, 259. As those children grew older, TikTok pursued them through school. It studied what "fuels usage and adoption in High Schools," concluded that the "high schooler is a core audience of our platform," and removed "age filters on [] paid [ad] channels in the U.S. market" to continue to increase those numbers. *Id.* ¶¶ 63–64. TikTok also studied what would keep its young users coming back: its research found the platform "particularly popular with younger users, who are particularly sensitive to reinforcement in the form of social reward and have minimal ability to self-regulate effectively." *Id.* ¶¶ 51, 259. When parents worried that their children had become addicted, a TikTok strategy document called that "a good thing for the platform." *Id.* ¶ 259. And TikTok made sure those children could stay. It relied solely on users' self-reported age, *id.* ¶ 260, told moderators to flag accounts only if a user appeared to be "9 years old," and ignored parents' requests to delete their children's accounts. *Id.* ¶ 261.

23. TikTok built its product to keep children scrolling in order to maximize revenue. The app pairs an engagement-maximizing recommendation feed with design choices such as intermittent variable rewards, infinite scroll, autoplay, and appearance-altering filters that prey on children's psychological and physiological vulnerabilities. The app offers no meaningful age verification, no effective parental controls, and no default session limits. Demand ¶ 71. TikTok's push notifications were designed to "[d]rive activeness: directly awake users," and TikTok sent them

to minors during school hours and as late as midnight—as many as 145 in a single evening. *Id.* ¶¶ 178, 180. TikTok's Trust & Safety team warned that the "compulsion to react to notifications at night" "impacts our minor users significantly." *Id.* ¶ 180. TikTok considered limiting school-hour and nighttime notifications for minors and declined, because doing so would reduce daily active users. *Id.* As one internal document put it: "Our goal is not to reduce time spent." *Id.* ¶ 199. Indeed, TikTok rejected any screen-time tools that would cut usage by more than a low single-digit percentage. What makes TikTok even more culpable is that TikTok knew how to build a safer product. In China, its sister app Douyin imposes a number of protective measures, including a mandatory 40-minute daily cap for youths, bars on use between 10 p.m. and 6 a.m., and forced rest periods. TikTok declined such safeguards for American children. *Id.* ¶¶ 201-02.

24. TikTok knew what its design was doing and the attendant consequences. Behind closed doors, in an internal discussion titled "Compulsive Usage and Lack of Agency," TikTok acknowledged that "compulsive usage on TikTok is rampant" and that this compulsive use "correlates with a slew of negative mental effects," including "increased anxiety," and it "interferes with essential personal responsibilities like sufficient sleep, work/school responsibilities, and connecting with loved ones." *Id.* ¶ 8. At the same time, TikTok proclaimed to parents and the public that its app was safe for children. *Id.* ¶¶ 211–12, 222–24.

25. Courts and juries have begun holding TikTok and other social-media companies accountable for this conduct. The federal MDL, in considering claims for social media addiction, sustained negligence and design-defect claims against TikTok based on, among other things, its failure to provide effective age verification, parental controls, and default session limits. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809 (N.D. Cal. 2023); Demand ¶ 27. In California's coordinated proceeding, the court denied TikTok's

motion for summary judgment in the first bellwether case, and TikTok settled as jury selection for the first bellwether trial was scheduled to begin. Demand ¶ 24. The defendants that went to trial lost—the jury found Meta negligent in the design of Instagram and liable for failure to warn, and it awarded punitive damages on a finding of malice. The same jury found Google negligent in the design of YouTube. *Id.* ¶¶ 23–25.

26. In March 2026, a Minnesota court denied TikTok's motion to dismiss in full, holding that "[t]he harm alleged is not from the third-party content, but from the design of the application itself." *State v. TikTok Inc.*, No. 27-CV-25-15301, Order Denying Motion to Dismiss ¶ 54 (Minn. Dist. Ct. Hennepin Cnty. Mar. 8, 2026). In August 2026, TikTok agreed to pay $400 million to resolve the federal government's claims that TikTok had allowed children under 13 to use the app and collected their data without parental consent. Settlement Agreement and Release ¶¶ 2, 5, *United States v. ByteDance Ltd.*, No. 2:24-cv-06535 (C.D. Cal. filed Aug. 21, 2026). TikTok also settled two more bellwether cases on the eve of trial: the second, set for trial in summer 2026, and the third, consolidated for trial in October 2026. *R.K.C. v. Meta Platforms, Inc.*, No. 23STCV31485 (Cal. Super. Ct. L.A. Cnty.); *Social Media Cases*, JCCP No. 5255 (Cal. Super. Ct. L.A. Cnty.) (S.J. and K.D.B.). And in September 2026, days before the first state attorney-general trial against it was set to begin, TikTok agreed to pay Alabama at least $100 million and to adopt the safeguards it had long refused, including daily time limits for teens, overnight access restrictions, and limits on school-hour notifications. *Consent Decree*, *State of Alabama v. TikTok Inc.*, No. 03-CV-2025-900628.00 (Ala. Cir. Ct. Montgomery Cnty. Sept. 25, 2026).

### B. Petitioners Used TikTok Under the 2019 Terms and Suffered Harm as a Result.

27. Ms. Brown and T.J. used TikTok while the 2019 Terms were in effect. Both began using TikTok as minors. Demand ¶¶ 16, 271.

28. Petitioners developed compulsive use of TikTok, driven by the design features described above, and suffered harm as a result. *See* Demand ¶¶ 271–81. Petitioners' injuries, and the conduct that caused them, began while the 2019 Terms governed their use of TikTok.

29. Ms. Brown began using TikTok as an approximately ten-year-old minor, used it while the 2019 Terms were in effect, and continues to use it. She quickly developed compulsive use, spending 30 to 35 hours a week on the platform. By 2019, she was struggling with depression serious enough that she sought help from her primary-care physician and from counseling at school. Her use of the platform also took a serious toll on her mental health more broadly, including periods of acute emotional crisis, an unhealthy relationship with food and her body image, and loss of interest in activities she once enjoyed. Those harms began while the 2019 Terms governed her use of TikTok. She was sixteen years old when TikTok rolled out the 2023 Terms on July 31, 2023.

30. T.J. created his TikTok account in approximately 2022, when he was about nine years old, and continues to use TikTok. He developed compulsive use, spending 35 to 40 hours a week on the platform, and more in the summer. His compulsive use caused chronic sleep deprivation, and he routinely stays up until 3 a.m. and falls asleep in class. It also caused a decline in his schoolwork, withdrawal from family and friends, loss of interest in activities he once pursued seriously, and growing dissatisfaction with his own appearance. He was ten years old when TikTok rolled out the 2023 Terms on July 31, 2023.

31. Ms. Brown and T.J. do not recall seeing or clicking "agree" on any pop-up regarding either set of terms, did not read either set of terms, and were never told that either would affect claims that had already accrued. Ms. Jones, T.J.'s parent,

never saw, reviewed, or consented to either set of terms on T.J.'s behalf. Petitioners dispute that the later terms displaced the agreement to arbitrate their accrued claims.

32. To the extent the Court determines that the 2023 Terms or the 2026 Terms govern Petitioners claims that accrued under the 2019 Terms, Petitioners disaffirm those terms.

**C. The 2019 Terms Require AAA Arbitration and the Arbitration Provision Survives Termination.**

33. TikTok made its arbitration provision prominent and unequivocal. The first section of the 2019 Terms warns, in capital letters, that "YOU AND TIKTOK AGREE THAT DISPUTES BETWEEN US WILL BE RESOLVED BY MANDATORY BINDING ARBITRATION." Clafton Decl. Ex. 1 at 1-2.

34. The arbitration clause TikTok drafted is sweeping. It covers "any remaining dispute, controversy, or claim (collectively, 'Claim') relating in any way to your use of TikTok's services and/or products, including the Services, or relating in any way to the communications between you and TikTok or any other user of the Services." *Id.* at 15. Every such Claim "will be finally resolved by binding arbitration." *Id.* The agreement "applies equally to you and TikTok." *Id.*

35. TikTok also determined the applicable forum and the rules: "The arbitration will be administered by the American Arbitration Association (AAA) under its rules including, if you are an individual, the AAA's Supplementary Procedures for Consumer-Related Disputes." *Id.* TikTok also agreed that "[p]ayment of all filing, administration and arbitrator fees will be governed by the AAA's rules." *Id.* at 16.

36. TikTok further stipulated that the FAA "governs the interpretation and enforcement of this provision." *Id.* at 15.

37. And TikTok made the arbitration provision permanent: "This arbitration provision will survive ***any termination*** of these Terms." *Id.* (emphasis added).

38. The 2019 Terms also gave users a meaningful choice. An individual user could "opt out of this arbitration agreement within thirty (30) days" of first using TikTok by sending an email. *Id.* at 15-16. Petitioners did not opt out.

**D. As Scrutiny Mounted, TikTok Attempted to Rewrite the Terms in July 2023.**

39. By 2023, public officials, regulators, and private litigants had intensified their scrutiny of TikTok's effect on young users. TikTok responded by discreetly rewriting its terms of service to alter how users could bring claims against it. *See* Sapna Maheshwari, *TikTok Quietly Changes User Terms Amid Growing Legal Scrutiny*, N.Y. TIMES (Dec. 14, 2023), https://www.nytimes.com/2023/12/14/business/media/tiktok-changes-user-terms.html.

40. The 2023 Terms deleted the arbitration clause. In its place, TikTok inserted a venue clause: "Any claim, cause of action or dispute, arising out of or relating to ***these Terms*** shall also be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles." Clafton Decl. Ex. 2 § 12.B (emphasis added).

41. The 2023 Terms define "these Terms" as the document the user is reading: "You are reading the terms of service (the 'Terms')." *Id.* § 1. Unlike the 2019 Terms' arbitration clause, which covers any claim "relating in any way to your use of TikTok's services," the 2023 venue clause reaches only disputes arising out of or relating to the 2023 Terms themselves. Nothing in the 2023 Terms states that the venue clause applies to claims that accrued before the 2023 Terms took effect.

42. The 2023 Terms also purported to impose a one-year limitations period for any dispute "arising out of or related to these Terms," after which claims are "PERMANENTLY BARRED." *Id.* § 12.C.

43. The 2023 Terms also add a choice of law provision under which any dispute "arising out of or relating to the Terms will be governed by the laws of the State of California." *Id.* § 12.B.

44. The 2023 Terms contain a generic integration clause stating that they "completely replace any prior agreements between you and TikTok in relation to the Services." *Id.* § 11. That clause does not mention arbitration, the survival provision of the 2019 Terms, or accrued claims.

45. TikTok rolled out the 2023 Terms on July 31, 2023, through a pop-up and a banner that required users to agree to the new terms before continuing to use the app. *Edwards*, 804 F. Supp. 3d at 1056. As this Court found, those notices "did not make clear that the 2023 TOS would supersede the survivability clause of the 2019 TOS." *Id.* The 2023 Terms offered no opt-out.

**E. *Edwards* Rejected Retroactive Application of the July 2023 Terms.**

46. TikTok has already made and lost the argument it now advances. In *Edwards*, a TikTok user's guardian petitioned this Court to compel TikTok to arbitrate claims that accrued under the 2019 Terms. TikTok argued, as it does now, that the 2023 Terms superseded the arbitration clause. This Court rejected that argument and granted the petition: "notwithstanding the integration clause, the arbitration agreement governs claims arising prior to 2023. While the 2023 TOS replaces 'any prior agreements,' it does not apply retroactively to claims that accrued prior to its entering effect." *Edwards*, 804 F. Supp. 3d at 1053.

47. TikTok appealed. *Edwards v. TikTok Inc.*, No. 25-5868 (9th Cir.). The parties agreed to hold the *Edwards* arbitration in abeyance pending resolution of the

appeal, but TikTok has not obtained any stay of this Court's ruling. Clafton Decl. ¶ 9 & Ex. 6.

**F. In January 2026, New Terms Were Issued in the Joint Venture's Name.**

48. On January 22, 2026, the day the Joint Venture became "the provider of the platform," a new set of terms was published in the Joint Venture's name. *AB 587 Report* at 1 n.1; Clafton Decl. Ex. 3 at 1. TikTok Inc. treats those terms as its own: it calls them "the operative TikTok Terms of Service" and contends that "the Parties agreed to" them. Clafton Decl. Ex. 5 at 2.

49. The 2026 Terms state: "These Terms of Service ('Terms') are an agreement between you and TikTok USDS Joint Venture LLC ('TikTok USDS Joint Venture,' 'we,' or 'us'), the operator of the Platform in the United States." Clafton Decl. Ex. 3 at 1. For purposes of Section 8.1 only, the informal-dispute-resolution provision, the 2026 Terms define "we" and "us" to include the Joint Venture's "parents, subsidiaries, and affiliates." *Id.* § 8.1.

50. Unlike the 2023 Terms, the 2026 Terms expressly purport to reach backward. Section 8.2 provides that any dispute "arising out of or relating to these Terms or the Platform shall also be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles, *regardless of whether the claim, cause of action, or dispute arose prior to your agreement to these Terms*." *Id.* § 8.2 (emphasis added). Section 8.1 likewise reaches disputes "regardless of when the dispute may have arisen or accrued." *Id.* § 8.1.

51. The 2026 Terms pair that retroactive venue clause with a purported retroactive bar. Section 8.3 extends the one-year limitations period to any dispute "ARISING OUT OF OR RELATED TO THESE TERMS OR THE PLATFORM" and declares that any claim not brought within a year is "PERMANENTLY BARRED." *Id.* § 8.3. Read together, Sections 8.2 and 8.3 purport to extinguish any

claim based on events more than a year old—including claims that accrued years earlier under an agreement that required arbitration and contained no such limit.

52. The 2026 Terms impose additional one-sided provisions as well. They purport to require the user to indemnify the Joint Venture and its affiliates against "any and all claims . . . costs (including attorneys' fees and other ***costs of arbitration***, litigation, defense, or settlement), and expenses arising out of or relating to your use of the Platform." *Id.* § 7 (emphasis added). Although the 2026 Terms purport to send every dispute to court regardless of when it arose, the indemnity provision still refers to "costs of arbitration." *Id.* §§ 7, 8.2. And they cap the operator's and its affiliates' aggregate liability at "the greater of $100 or the amount you have paid us in the past 12 months." *Id.* § 4.

53. The 2026 Terms' integration clause states that they "completely replace any prior terms of service between you and TikTok Inc. related to the Platform." *Id.* § 9. Like its 2023 predecessor, the clause says nothing about arbitration or about the survival provision of the 2019 Terms.

54. The 2026 Terms did not present these changes as what they were. The plain-English summary of the dispute-resolution section provided to users says only: "We hope we do not get into a dispute but, if we do, there are a couple of ways we can try to resolve it." *Id.* § 8.3. Nothing in that summary discloses that the new terms purport to strip users of their right to arbitrate accrued claims or to bar previously accrued claims outright.

55. The 2026 Terms were presented on a take-it-or-leave-it basis. They declare that "[i]f you continue to use the Platform after any updated Terms are in effect, you agree to be bound by the updated Terms." *Id.* § 6. Their own summary puts the choice bluntly: "if you want to keep using the Platform, you will need to agree to the changes." *Id.* According to news reports, beginning January 22, 2026, users who opened the app were met with a pop-up requiring them to click "agree"

to the new terms; users who did not agree were blocked from using TikTok. Aimee Picchi, *TikTok's New Privacy Policy Is Sparking a Backlash. Here's What to Know.*, CBS News (updated Jan. 28, 2026), https://www.cbsnews.com/news/tiktok-new-terms-of-service-privacy-geolocation-personal-information/. On information and belief, to the extent a pop up was displayed, nothing in the pop-up disclosed that the new terms would apply to, or bar, claims that had already accrued.

56. Petitioners received no individualized notice that the 2026 Terms would apply to claims that had already accrued, and no opportunity to opt out of the new dispute-resolution provisions while continuing to use TikTok.

57. The 2026 Terms were issued four months after this Court's ruling in *Edwards*, while TikTok's appeal was pending. This Court granted the *Edwards* petition on September 11, 2025, and TikTok appealed days later. *Edwards v. TikTok Inc.*, No. 25-5868 (9th Cir. docketed Sept. 18, 2025). On January 22, 2026, before the Ninth Circuit had ruled, the new terms announced that every claim must go to court "regardless of whether the claim . . . arose prior to your agreement to these Terms." Clafton Decl. Ex. 3 § 8.2. TikTok Inc. now invokes that language to accomplish what it could not obtain from this Court. It does so knowing that the undersigned represented TikTok users pursuing pre-2023 claims: counsel notified TikTok in December 2023 that they intended to arbitrate such claims on behalf of TikTok account holders, and counsel represented the petitioner in *Edwards*.

**G. Petitioners Demanded Arbitration, and TikTok Refused.**

58. On July 23, 2026, Petitioners' counsel served notices of dispute on behalf of Petitioners, under the informal dispute resolution provision of the 2019 Terms. Clafton Decl. ¶ 5 & Ex. 1 at 15. Counsel for TikTok failed to engage until September 18, 2026—weeks after Petitioners filed their arbitration demands—at which point counsel responded to Petitioners' notices of dispute. TikTok stated that it "declines to participate in arbitration proceedings with respect to the claims

asserted," asserted that its 2023 terms "govern . . . any disputes arising" from Petitioners' use of the platform, and took the position that the "claims lack merit." Clafton Decl. ¶ 12; Clafton Decl. Ex. 8 at 1.

59. On September 1, 2026, Petitioners filed individual demands for arbitration with the AAA under the 2019 Terms. The AAA assigned the filing Case No. 01-26-0005-6681. Clafton Decl. ¶ 6; Clafton Decl. Ex. 4; Clafton Decl. Ex. 5 at 1. Each demand asserts claims for strict liability (design defect and failure to warn), negligence, and fraudulent concealment and misrepresentation arising from Petitioners' use of TikTok. Demand ¶¶ 282–359.

60. On October 23, 2026, the AAA asked TikTok to "confer and let AAA know to which Respondent party we should direct Respondents' Initiation Fee invoice by November 2, 2026." The AAA also directed TikTok to pay a $300 administrative fee for Expedited Clause Review by November 23, 2026. Clafton Decl. ¶ 7.

61. Instead, on October 26, 2026, TikTok responded to the AAA, taking the position that it refused to arbitrate. Its counsel wrote to the AAA that TikTok "declines to arbitrate this matter because it has no operative arbitration agreement with Claimants." Clafton Decl. Ex. 5 at 2. TikTok asserted that "[t]he arbitration agreement proffered by Claimants was superseded by a later amendment in July 2023," and it relied on the 2026 Terms as "the operative TikTok Terms of Service." *Id.* at 2.

62. TikTok further asserted that the AAA "lacks jurisdiction" and asked the AAA to "close the file as to claims against TTI." *Id.* at 2, 4. Citing *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), TikTok insisted that "a court, not an arbitrator, must decide whether the parties' first agreement was superseded by their second," and that "until a court answers it, there is no basis for AAA to administer this case."

Clafton Decl. Ex. 5 at 2-3. TikTok told the AAA that Petitioners "cannot proceed with this arbitration until that disagreement is settled by the courts." *Id.* at 2.

63. As of the date of this petition, TikTok has not paid any fees or participated in the arbitration. Clafton Decl. ¶ 11.

64. In *Edwards*, this Court considered TikTok's argument that its later terms superseded the 2019 arbitration agreement, rejected it, and compelled arbitration. *Edwards*, 804 F. Supp. 3d at 1053. The reasoning of *Edwards* applies to TikTok's renewed reliance on the July 2023 Terms. Petitioners' claims arise under the same 2019 Terms and the same survival clause, and TikTok relies on the same July 2023 amendment. *See* Declination at 2. By TikTok's own account, the venue clause it invokes "is present in every version of the TikTok Terms of Service since they were updated in July 2023." *Id.* at 3. The 2026 Terms, which TikTok Inc. did not issue, still say nothing about arbitration or the survival clause. Clafton Decl. Ex. 3 §§ 8.2, 9.

65. TikTok tells the AAA it cannot proceed until a court decides. A court has decided, and TikTok did not like the answer. Instead of accepting it, or even waiting for the Ninth Circuit, TikTok now points to yet another set of terms, issued by a different company four months after *Edwards*. Those terms do not mention arbitration or the survival clause any more than the 2023 Terms did. *See supra* ¶¶ 48–57. If TikTok could avoid a ruling by citing the next rewrite of its terms, no ruling would ever settle the question, TikTok could endlessly appeal and inject years of delay, and TikTok would never have to arbitrate the claims it agreed to arbitrate. In the meantime, TikTok has not sought the judicial determination it says it needs before it will arbitrate. Clafton Decl. ¶ 11. As a result, Petitioners have no forum at all. *See* Mem. of Law.

66. Petitioners therefore bring this petition to compel TikTok to arbitrate, as the 2019 Terms require and as this Court held in *Edwards*.

**CLAIM FOR RELIEF — COUNT I: Compel Arbitration Pursuant to 9 U.S.C. § 4**

67. Petitioners repeat and reallege the preceding paragraphs as if fully set forth here.

68. Each Petitioner entered into a valid written agreement with TikTok—the 2019 Terms—that requires arbitration before the AAA of any claim relating in any way to that Petitioner's use of TikTok's services and products, and that provides that the arbitration provision survives any termination of the agreement.

69. Petitioners seek to compel arbitration of the claims against TikTok that relate to Ms. Brown's and T.J.'s use of TikTok's services and products and accrued while the 2019 Terms governed their use.

70. Neither the 2023 Terms nor the 2026 Terms displaced the 2019 Terms' arbitration provision as to those claims. The 2023 venue clause is not retroactive; neither integration clause clearly and specifically waives the surviving arbitration provision; TikTok Inc. is not a party to the 2026 Terms; the implied covenant of good faith and fair dealing bars applying a unilateral modification to accrued and known claims; and the 2026 Terms are unconscionable as applied to those claims.

71. Petitioners sent written notices of dispute to TikTok on July 23, 2026, and filed their demands with the AAA on September 1, 2026. Clafton Decl. ¶¶ 5–6.

72. TikTok has refused to arbitrate. On October 26, 2026, TikTok declined to arbitrate Petitioners' claims and asked the AAA to close its file. TikTok has not paid any of the fees the AAA has assessed.

73. Petitioners are aggrieved by TikTok's refusal. Unless TikTok is compelled to arbitrate, Petitioners will be denied the forum TikTok promised them.

74. The FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such

arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Under the FAA, once the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

## PRAYER FOR RELIEF

Petitioners respectfully request that the Court enter an order:

A. Under 9 U.S.C. § 4, compelling TikTok to arbitrate, before the AAA and in accordance with the 2019 Terms, each Petitioner's claims that accrued under the 2019 Terms, including by paying the fees and costs the AAA assesses against TikTok under its rules;

B. Awarding Petitioners their costs; and

C. Granting such other relief as the Court deems just and proper.

Dated: November 23, 2026

Respectfully submitted,

*/s/ Ivy Ngo*
Ivy Ngo (S.B.N. 249860)
**FREEDMAN NORMAND FRIEDLAND LLP**
2108 N Street, #15185
Sacramento, CA 95816
T: (786) 924-2900
Email: ingo@fnf.law

Kyle Roche (*pro hac vice* forthcoming)
Riley Clafton (*pro hac vice* forthcoming)
Mendel Konikov (*pro hac vice* forthcoming)
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Suite 915

New York, NY 10017
T: (646) 494-2900

*Counsel for Petitioners*

# VERIFICATION OF ALICIA BROWN

I, ALICIA BROWN, declare as follows:

The factual allegations set forth herein concerning me and my use of TikTok are true of my own personal knowledge, except as to those matters alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Executed on November _____, 2026, in Douglasville, Georgia.

ID: 44415246-CBB1-4805-8736-C22...
Digitally signed by Alicia Brown
<aliciacbrown1211@gmail.com>
November 23, 2026 at 11:22 AM EST

ALICIA BROWN



Document ID: BF56875B28652718903031FD78550511

# **VERIFICATION OF TRACIE BOND JONES**

I, TRACIE BOND JONES, on behalf of T.J., a minor, declare as follows:

The factual allegations set forth herein concerning T.J. and his use of TikTok are true of my own personal knowledge, except as to those matters alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Executed on November 20, 2026 in Greensboro, North Carolina.

ID: A8644C3D-1F1A-4DC0-B126-4E0...
Digitally signed by Tracie Bond Jones
<bondtw@gmail.com>
November 20, 2026 at 7:00 PM EST

TRACIE BOND JONES, on behalf of T.J., a minor



Document ID: 74BC16D062639B02CE86AA56AA40664D